HECHT, Justice.
An individual convicted of a sex offense sought modification of his sex offender registration obligation. After determining the individual met the requirements of the statutory registration modification provision, the district court granted modification and ordered the individual removed from the offender registry. The State filed a petition for writ of certiorari, contending the district court erred in determining the individual was eligible for modification under the provision. We granted the petition and transferred the case to the court of appeals. On further review of the decision of the court of appeals, we annul the writ.
I. Background Facts and Proceedings.
David Buchwald was eighteen years old when he pleaded guilty to a single count of lascivious acts with a child in February 2002. Buchwald was sentenced and incarcerated as an adult. Upon his release from prison in April 2004, Buchwald was required to register as a sex offender for ten years under the then-existing version of Iowa’s sex offender registry statute. He registered and remained on the registry without incident until he petitioned for modification of his requirement in February 2011.
Iowa’s legislature amended the registry statute significantly in 2009 and added a provision under which persons subject to registration requirements may petition the district court for modification. See Iowa Code § 692A.128 (Supp.2009). The provision grants the district court authority to modify registration obligations if certain conditions are met. Id. The relevant subsections provide:
1. A sex offender who is on probation, parole, work release, special sentence, or any other type of conditional release may file an application in district court seeking to modify the registration requirements under this chapter.
2. An application shall not be granted unless all of the following apply:
a. The date of the commencement of the requirement to register occurred at least two years prior to the filing of the application for a tier I offender and five years prior to the filing of the application for a tier II or III offender.
b. The sex offender has successfully completed all sex offender treatment programs that have been required.
c. A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender *78 as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.
d. The sex offender is not incarcerated when the application is filed.
e. The director of the judicial district department of correctional services supervising the sex offender, or the director’s designee, stipulates to the modification, and a certified copy of the stipulation is attached to the application.
[[Image here]]
5. The court may, but is not required to, conduct a hearing on the application to hear any evidence deemed appropriate by the court. The court may modify the registration requirements under this chapter.
6. A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense, the offender is not under the supervision of the juvenile court or a judicial district judicial department of correctional services, and the department of corrections agrees to perform a risk assessment on the sex offender. However, all other provisions of this section not in conflict with this subsection shall apply to the application prior to an application being granted except that the sex offender is not required to obtain a stipulation from the director of a judicial district department of correctional services, or the director’s desig-nee.
[[Image here]]

Id.

Before the 2009 amendments, the registry statute had no similar modification provision — instead, persons on the registry could seek only determinations of “whether the offense for which the person ha[d] been convicted require[d] the person to register,” and “whether the period of time during which the person [was] obligated to register ... [had] expired.” See id. § 692A.8 (2009).
In his 2011 petition, Buchwald invoked the new modification provision and alleged he met or could meet each of the provision’s prerequisites for adjustment of his obligation. More specifically, he noted he was not incarcerated or under any other probationary oversight at the time, he had been classified as a tier II offender and had been on the registry for more than five years, and he had not been ordered to undergo any sex offender treatment program. Because the provision also requires a risk assessment classifying an offender as low risk to reoffend as a prerequisite for modification, Buchwald requested an assessment, which the district court ordered.
Initially, Buchwald relied on subsection 6 of section 692A.128 as the basis for his eligibility for modification. See id. § 692A.128(6) (2011) (“A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense....”) When the district court ordered the risk assessment based on Buchwald’s petition, the State urged reconsideration of the order on behalf of the department of correctional services (the department), contending the legislature’s use of the word “adjudication” in subsection 6 indicates the subsection applies only to individuals subject to the registry as a result of juvenile adjudications. Under that reading, the State maintained, Buchwald’s conviction as an adult rendered him ineligible for modification under subsection 6. The district court held a hearing oh the State’s motion, at which time Buchwald moved to amend his petition to “include consideration of Iowa Code section 692A.128 in its entirety” as the basis *79 of his argument for eligibility.[1] After granting Buchwald’s motion to amend, the district court denied the State’s motion for reconsideration and ordered the risk assessment, agreeing subsection 6 “clearly applie[d] only to juveniles” but concluding subsections 2 and 5 granted the court discretion to modify registration requirements provided various statutory criteria were met. See id. § 692A.128(5) (“The court may modify the registration requirements under this chapter.”); see also id. § 692A.128(2) (providing “[a]n application shall not be granted unless all of the following apply” and enumerating several conditions).
The State petitioned our court for a writ of certiorari and moved to stay the district court order, but we denied the petition and motion. The department then performed the risk assessment and determined Buchwald presented a low risk to reoffend. With the risk assessment completed, the district court held a new hearing on Buchwald’s eligibility for modification, at which the parties reiterated their arguments. The district court, having previously addressed the arguments, concluded the assessment rendered Buchwald eligible for modification under subsection 1 and therefore reduced the duration of Buchwald’s registration obligation to five years. Because five years had elapsed before Buchwald petitioned for modification, the district court ordered him removed from the registry.
The State filed a new petition for writ of certiorari challenging the legality of the district court’s modification and removal order, insisting Buchwald was ineligible for modification under subsection 6 and contending he was also ineligible under subsection 1 because he was no longer subject to any of the forms of corrections supervision set forth in subsection 1. See id. 692A.128(1) (“A sex offender who is on probation, parole, work release, special sentence, or any other type of conditional release may file an application in district court seeking to modify the registration requirements under this chapter.”). We granted the petition and transferred the case to the court of appeals.
As he had in the district court, Buchwald asserted at the court of appeals that an appropriate interpretation of the text of section 692A.128 allows for modification of his obligation, and that any contrary interpretation would violate his constitutional rights to due process and equal protection. The State argued Buchwald’s eligibility for modification is explicitly foreclosed by the text of subsections 1 and 6 and added that his constitutional arguments are foreclosed by Iowa Supreme Court precedent. The court of appeals sustained the State’s challenge, concluding Buchwald was not entitled to modification because subsection 1 of the statute, by its express terms, requires an offender be under one of the forms of corrections supervision listed. Further, the court of appeals explained, Buehwald’s constitutional challenges were unpersuasive given our prior caselaw regarding the registry. Finally, the court of appeals declined to address the applicability of subsection 6, believing Buchwald had not raised on appeal his ineligibility under subsection 6. We granted Buchwald’s application for further review of the court of appeals decision.
II. Scope of Review.
In certiorari cases we review for errors at law. State v. Iowa Dist. Ct., 812 *80 N.W.2d 1, 2 (Iowa 2012). We examine the jurisdiction of the district court and the legality of its actions, and we have said illegality exists when the court has improperly applied the law. Id. In certiorari cases alleging violation of a constitutional right, we review de novo the totality of the circumstances surrounding the challenged ruling on the constitutional right. State v. Iowa Dist. Ct., 801 N.W.2d 513, 517 (Iowa 2011).
III. Discussion.
The State relies on specific statutory language in subsections 1 and 6 to argue Buchwald was ineligible for modification. Buchwald was ineligible for modification under subsection 1, the State contends, because the legislature’s use of the present-tense phrase “is on” limits subsection l’s application to individuals currently subject to some form of corrections supervision, and Buchwald is no longer subject to any of the specified forms of supervision. See Iowa Code § 692A.128(1) (“A sex offender who is on probation, parole, work release, special sentence, or any other type of conditional release may file an application [for modification].... ” (Emphasis added.)). The State suggests section 692A.128(2) adds further support for this interpretation by requiring that “[t]he director of the judicial district department of correctional services supervising the sex offender ... stipulates to the modification ....” Id. § 692A.128(2)(e) (emphasis added). This reading is consistent with the purpose of the statute, the State maintains, because the forms of ongoing corrections supervision listed can ensure a level of public protection comparable to the protection provided by the registry.
An interpretation of subsection 1 encompassing individuals not currently subject to some kind of supervision, the State adds, would render superfluous subsection 6, which allows individuals “not under the supervision of the juvenile court or a judicial district judicial department of correctional services,” to petition for modification. Id. § 692A.128(6). As noted, the State insists the use of the word “adjudication” in subsection 6 indicates the subsection applies only to individuals subject to the registry as a result of juvenile adjudications. Id. (“A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense.... ”). The State suggests its reading of subsection 6 necessarily constrains our interpretation of subsection 1. There would be no need for subsection 6, the State maintains, if subsection 1 were applicable to individuals not currently subject to correctional supervision, because that population would include the population of former juvenile offenders meeting the conditions of subsection 6.
Buchwald’s argument on appeal highlights the ambiguity in the language of the modification provision as a whole. He emphasizes the permissive phrasing of subsection 1, which establishes an offender under corrections supervision “may file an application” for modification. Id. § 692A.128(1). That language, he suggests, says nothing to preclude individuals who have completed required periods of corrections supervision from petitioning, and the language should be read to grant these individuals an opportunity for modification. Buchwald also contests the State’s claim that subsection 6 renders eligible only those juvenile offenders no longer subject to corrections supervision. Examined in its entirety, Buchwald contends, the modification provision grants him an opportunity to petition for modification. His interpretation is consistent with the statute’s public safety purpose, he insists, because individuals in his position, having completed their corrections obligations and *81 satisfied the risk assessment and other statutory prerequisites, fall squarely within the class the statute is designed to make eligible. Any contrary interpretation, he argues, would violate his rights to equal protection and procedural and substantive due process.
We have not yet had occasion to interpret the modification provision. We have often explained we avoid assessing isolated words and phrases when construing statutory provisions. See, e.g., In re Estate of Melby, 841 N.W.2d 867, 879 (Iowa 2014). In interpreting provisions of the prior version of the registration enactment lacking relevant statutory definitions, we have examined the statutory structure and considered the contexts in which words are used in construing provisions in a manner best achieving the statutory purpose. See, e.g., In re S.M.M., 558 N.W.2d 405, 407-08 (Iowa 1997). We have explained the purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public. See State v. Seering, 701 N.W.2d 655, 667 (Iowa 2005); S.M.M., 558 N.W.2d at 408.
Because we conclude an appropriate interpretation of subsection 6 resolves the parties’ dispute here, we address only the parties’ arguments confronting that provision. The State’s argument regarding the use of “adjudication” instead of “conviction” in subsection 6 is superficially sound. The legislature has employed the concept of adjudication in select provisions in the amended registry statute to refer very clearly to individuals having committed crimes as juveniles. See, e.g., Iowa Code § 692A.101(7) (defining “convicted” broadly to include adult and juvenile offenders and referring to juveniles as having been “adjudicated delinquent”); id. § 692A.103(8) (setting forth registration requirements for individuals “adjudicated delinquent”); cf. id. § 692A.125(4) (addressing statute’s ret-roactivity and employing both “conviction” and “adjudication” without making reference to juvenile or adult status). A closer reading of the language of subsection 6, however, coupled with a closer examination of the modification provision and the registration statute, compels us to conclude subsection 6 renders Buchwald eligible for modification.[2]
Subsection 6 grants any “sex offender” required to be on the registry “as a result of an adjudication for a sex offense” an opportunity for modification, provided the individual is no longer under juvenile court or correctional supervision and the department of corrections agrees to perform a risk assessment. Id. § 692A.128(6). The statute defines sex offender broadly to include any “person who is required to be registered under [the statute].” Id. § 692A.101(26). Similarly, the statute de *82 fines sex offense broadly, to include any “indictable offense for which a conviction has been entered that is enumerated in section 692A.102, ... [or] any comparable offense ... under prior law, or any comparable offense ... in [another jurisdiction].” Id. § 692A.101(27). Those definitions appear to do little to limit the applicability of subsection 6. Against the backdrop of those definitions, however, the provision in subsection 6 limiting modification relief to only those offenders no longer under correctional or juvenile court supervision is a natural complement to subsection 1. Subsection 1 applies broadly to those offenders currently subject to corrections supervision, while subsection 6 applies broadly to those offenders no longer subject to supervision. See 4 Robert R. Rigg, Iowa Practice Series: Criminal Law § 6:95, at 298 (2013) (noting individuals not under supervision but still subject to the registry are eligible for modification under subsection 6).
A reading of subsections 1 and 6 in tandem is bolstered by additional interpretive evidence. We find the use of “adjudication” in subsection 6 as distinct from “adjudicated delinquent” or “adjudication of delinquency” particularly instructive in this context. Our legislature has employed some form of the word “adjudicated” in numerous provisions in our registration statute. In the vast majority of those instances, the use is linked very clearly with juvenile status by one or more of the words “delinquent,” “delinquency,” or “juvenile.” See Iowa Code § 692A.101(7) (“ ‘Convicted’ means ... adjudicated delinquent for an act which is an indictable offense in this state ... including but not limited to a juvenile who has been adjudicated delinquent .... ” (Emphasis added.)); id. § 692A.103 (1) (d) (noting offender must register “from the date an adjudicated delinquent is released from placement in a juvenile facility” (emphasis added)); id. § 692A.103(l)(e) (noting offender must register “from the date an adjudicated delinquent commences attendance as a student” (emphasis added)); id. § 692A.103(3) (“A juvenile adjudicated delinquent ... shall be required to register ... unless the juvenile court waives the requirement....” (Emphasis added.)); id. § 692A.103(4) (“[A] juvenile [fourteen or older at the time of offense] shall be required to register if the adjudication was for [certain offenses].... At the time of adjudication the judge shall make a determination ....” (Emphasis added.)); id. § 692A.103(5)(e) (“This subsection does not apply to a juvenile fourteen years of age or older at the time the offense was committed if the adjudication was for [certain offenses].” (Emphasis added.)).
In two of the remaining instances, our legislature has not explicitly linked the concept of adjudication with juvenile status, but has, in the very same clause, juxtaposed “adjudication” with a use of “conviction.” See id. § 692A.125(4) (“[E]ach conviction or adjudication for a sex offense requiring registration, regardless of [when] such conviction or adjudication occurred ..., shall be included in determining the tier requirements pursuant to this chapter.” (Emphasis added.)). But cf. id. § 692A.116(2) (“Application ... shall be made on forms ... and accompanied by copies of sentencing or adjudicatory orders with respect to each offense .... ” (Emphasis added.)).
In the only other instances we have found in which a form of “adjudication” appears in the statute, our legislature has notably employed it more broadly to mean something other than “adjudicated delinquent.” The statute’s definition of criminal or juvenile justice agency, for example, refers to “an agency or department ... which performs as its principal function the apprehension, prosecution, adjudicar *83 tion, incarceration, or rehabilitation of criminal or juvenile offenders.” Id. § 692A.101(8) (emphasis added). This definition very clearly sets forth five distinct functions — one of which is adjudication— entities perform in our justice system, and is structured to indicate (1) both criminal and juvenile agencies may perform any of the five functions and (2) both criminal and juvenile offenders may be subject to any of the five functions.
In much the same way, the statute employs “adjudication” to refer to individuals of both adult and juvenile status in providing “convicted,” for purposes of the statute, does not include “a plea, sentence, adjudication, deferred sentence, or deferred judgment which has been reversed or otherwise set aside.” Id. § 692A.101(7) (emphasis added). We think it unlikely the definition’s use of “adjudication” for purposes of exemption distinguishes adults having had convictions or adjudications set aside from juveniles having had adjudications set aside. Instead, it constitutes another clear use of “adjudication” referring to both adult and juvenile status, and another use distinct from those instances clearly linking adjudication with the word “delinquent,” “delinquency,” or “juvenile.”
Turning to subsection 6, we note “adjudication” has not been linked with the concept of “delinquency” as it has been elsewhere to signify specifically juvenile status, and has not been contrasted with a use of the word “conviction,” as it has been elsewhere to signify specifically juvenile status. While subsection 6 does make reference to “the supervision of the juvenile court,” it also refers, in the same disjunctive clause, to “a judicial district judicial department of correctional services” — a reference which, for most purposes, will signify adult status. See id. § 692A.128(6). Given the absence in subsection 6 of the linguistic cues employed elsewhere to suggest adjudication’s limitation to juvenile status, we conclude the registration chapter’s uses of “adjudication” referring to both adult and juvenile status must guide our reading of “adjudication” in subsection 6.
Our interpretation of “adjudication” in subsection 6 pertaining to both juvenile and adult offenders is consistent with both the plain meaning of the term and its use elsewhere in the Code. See Black’s Law Dictionary 47 (9th ed.2009) (defining adjudication as “the process of judicially deciding a case” and making no distinction between adult and juvenile proceedings); see also Iowa Code § 907.1(1) (making no reference to limitation to juveniles in defining “deferred judgment” as “a sentencing option whereby both the adjudication of guilt and the imposition of a sentence are deferred by the court” (emphasis added)); accord Fed.R.Civ.P. 28(b) (employing “adjudication” in establishing standards for class action certification and making no distinction between adult and juvenile status); Doe v. Miller, 216 F.R.D. 462, 467, 471 (S.D.Iowa 2008) (examining constitutional challenges to prior version of registration statute and certifying plaintiff and defendant classes based on “enormous” risk of “inconsistent adjudications” as individuals, while making no distinction between adult and juvenile status). This usage evidence favors an interpretation of subsection 6 granting modification eligibility to those individuals satisfying the various prerequisites of subsection 6 and the modification provision without limiting its reach to juvenile offenders.
In determining the meaning of adjudication in subsection 6, we have also considered the 2009 Summary of Legislation produced by Iowa’s Legislative Services Agency (LSA). The LSA explains these postenactment summaries are intended to “generally inform[ ]” interested individuals *84 and provide “quick reference” to legislation. See Legislative Services Agency, 2009 Summary of Legislation, at i (Iowa 2009), available at https://www.legis.iowa. gov/docs/shelves/summaries/Summary% 20of% 20Legislation% 202009.pdf [hereinafter 2009 Summary ]. The LSA summary addresses the registration statute generally and nonexhaustively in two separate chapters — -one entitled “Children and Youth,” and one entitled “Criminal Law, Procedure, and Corrections.” See id. at 69, 87. In the chapter on children and youth, the summary likely makes reference to section 692A.128(6) in suggesting the statute “permits an offender required to register as a juvenile who is no longer under supervision to apply for a modification ... if the Department of Corrections agrees to perform a risk assessment.... ” Id. at 69. The summary in that chapter makes no reference to the possibility of adult eligibility under subsection 1 or subsection 6, presumably because the LSA determined adult eligibility had no relevance to its chapter regarding legislation affecting children arid youth. In its criminal law chapter, the LSA likely makes reference to section 692A.128(1) in suggesting the modification provision “permits an offender on probation or parole to file [a modification application] in district court....” Id. at 95. The summary makes no reference, however, to the eligibility of those offenders on work release, special sentence, or any other type of conditional release — individuals explicitly granted eligibility under subsection 1.
The criminal law chapter in the LSA summary also likely makes reference to section 692A.128(6) in generally explaining the “division provides that an offender required to register as a juvenile who is no longer under supervision may apply for modification.... ” 2009 Summary, at 95. That section of the summary gives no indication, however, of whether any other individuals might be eligible for modification, or alternatively and perhaps more importantly, whether any specific classes of individuals might be precluded from petitioning. Given the general and plainly nonexhaustive treatment of the registration legislation in both the children and youth chapter and the criminal law chapter, we are unable to derive helpful interpretive guidance from the LSA summary.
Instead, in addition to the usage evidence we have examined, our repeated identification of the registration statute’s purpose of public protection guides our interpretation of subsection 6. See, e.g., State v. Willard, 756 N.W.2d 207, 212 (Iowa 2008); Seering, 701 N.W.2d at 667; S.M.M., 558 N.W.2d at 408. The modification provision includes various safeguards promoting this purpose: offenders must have completed all sex offender treatment programs that have been required; offenders must have completed a risk assessment and have been classified as low risk to reoffend; the district court may gather “any evidence deemed appropriate” to its determination and conduct a hearing on any application; and, for purposes of subsection 6, offenders must have completed any required periods of juvenile court and judicial district corrections supervision. An interpretation of subsection 6 rendering individuals in Buchwald’s position eligible for modification only after having satisfied each of those requirements balances the registry’s protective purpose with our legislature’s related recognition — in enacting the modification provision — of an individual’s interest in removal from the registry when appropriate. The interpretation favored by the State could, as Buchwald has argued, raise questions as to whether a distinction between individuals subject to corrections supervision and individuals no longer subject to supervision comports with relevant constitutional principles. *85 The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of “constitutional shoals” when possible. Simmons v. State Pub. Defender, 791 N.W.2d 69, 74 (Iowa 2010). Our interpretation of subsection 6 is consistent with our general preference for avoiding constitutional adjudication where possible.
Based on the language of subsection 6, the structure of the modification provision, the interpretive guidance from elsewhere in the registration statute, and the statute’s purpose, we conclude subsection 6 grants modification eligibility to those individuals no longer subject to corrections supervision who have satisfied the modification provision’s various prerequisites. Although we conclude the district court’s interpretation of subsection 6 was incorrect, we find no illegality in the district court’s determination Buchwald was eligible for modification of his registration requirement or the order removing Buchwald from the registry. Accordingly, we annul the writ.
IV. Conclusion.
For the foregoing reasons, we vacate the decision of the court of appeals and annul the writ.
WRIT ANNULLED.
All justices concur except Mansfield, J., who dissents.

. Buchwald also argued at the hearing any interpretation of the modification provision rendering him ineligible would violate his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution and under article I, section 6 (equal protection) and section 9 (due process) of the Iowa Constitution.

. We note the legislature’s inclusion of a separate juvenile modification provision in section 692A.103. See Iowa Code § 692A.103(5) (2011). That section provides a "juvenile court may, upon motion of the juvenile, and after reasonable notice to the parties and hearing, modify or suspend the registration requirements if good cause is shown.” Id. The provision requires, however, the motion "be made and the hearing shall occur prior to the discharge of the juvenile from the jurisdiction of the juvenile court.” Id. § 692A.103(5)(a). The provision’s requirement that an offender is currently subject to juvenile court supervision therefore clearly contrasts with the requirement in subsection 6 that an offender is not subject to juvenile court supervision. The provision does not, however, resolve the question of the effect of the additional requirement in subsection 6 that an offender is not subject to correctional services supervision.