**IN THE COURT OF APPEALS OF IOWA**

No. 15-1448
Filed November 9, 2016


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KORY MICHAEL WALLACE,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Warren County, Susan Choate

Cox, District Associate Judge.


        Kory Wallace appeals the district court's denial of his application to modify

his sex offender registration obligation.  **AFFIRMED.**


        Nicholas A. Sarcone of Stowers & Sarcone P.L.C., West Des Moines, for

appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.


        Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Kory Wallace appeals the district court's denial of his application to modify his sex offender registration obligation. He contends the district court's findings are not supported by substantial evidence.

## I.    *Background Proceedings*

Wallace pled guilty to assault with intent to commit sexual abuse. *See* Iowa Code § 709.11 (2001). The district court granted him a deferred judgment, placed him on probation for two years, ordered him to "successfully complete the Sexual Offender Treatment Program," and required him "to comply with the Sexual Abuse Registry." At the time Wallace was sentenced, the registration period was ten years. *See id.* § 692A.2(1). The law was subsequently amended to require lifetime registration for this offense. *See id.* §§ 692A.101(1)(a)(5) (2009) (defining "[a]ssault with intent to commit sexual abuse in violation of section 709.11" as an aggravated offense); 692A.106(5) (increasing the registration duration for a sex offender convicted of an aggravated offense from ten years to life); 692A.125(2) (applying the lifetime registration requirement retroactively to "[a]ny sex offender including a juvenile offender who is required to be on the sex offender registry as of June 30, 2009").

Wallace violated the terms of his probation by using marijuana and methamphetamine. Abstinence from illegal drug use was part of successful completion of the sex offender program. The district court revoked his deferred judgment, sentenced him to a prison term not exceeding two years, suspended the sentence, and placed him on probation for two years.

Wallace again violated the terms of his probation, by appearing at a group therapy session "looking and acting high, or under the influence of something." A urine test was positive for methamphetamine. The district court found Wallace in contempt of court, ordered him placed at a halfway house for drug treatment, and required him to participate in a "certified sex offender treatment program and . . . successfully complete sex offender treatment through such certified program."

In time, Wallace's counselor sent the department of correctional services a "discharge summary" stating Wallace had "done a pretty good job of continuing to address his issues related to his abusive sexual behavior" and opining that if he remained "active in his recovery program which enables him to remain sober from methamphetamine use he poses a small risk to reoffend in a sexual manner." The counselor further opined that Wallace had "successfully internalized the lessons of his sex offender program," which he completed while on extended probation.

Wallace was discharged from probation. The probation officer's discharge report noted Wallace had "done a poor job with treatment and supervision" but "[h]is time on probation" was "up."

Twelve years after his sentence was imposed, Wallace filed an application to modify the sex offender registration requirements pursuant to Iowa Code section 692A.128 (2013). Following a hearing at which the State offered no resistance, a district court judge determined that Wallace had "successfully completed all sex offender treatment programs that [were] required of him" but had not obtained a risk assessment from the department of correctional services. The court held the matter in abeyance until he obtained the assessment.

After the assessment was completed, a different district court judge held a hearing at which the assessment preparer testified. The court determined Wallace failed to complete "all sex offender treatment programs that ha[d] been required" and, according to the risk assessment, was not "classified as a low risk to reoffend." The court denied Wallace's application for modification of the lifetime registration requirement as well as a subsequent motion to enlarge the ruling. Wallace appealed.

## II. Analysis

### A. Standard of Review

As a preliminary matter, Wallace and the State disagree on our standard of review. Wallace argues our review is for correction of legal error, with fact-findings binding us if supported by substantial evidence. The State asks us to examine the ruling for an abuse of discretion. We believe both standards apply.

Iowa Code section 692A.128 "grants the district court authority to modify [sex offender] registration obligations if certain conditions are met." *State v. Iowa Dist. Court ex rel. Story Cty.*, 843 N.W.2d 76, 77 (Iowa 2014). Iowa Code section 692A.128(2) sets forth those conditions. In pertinent part, the provision states:

> An application [for modification] shall not be granted unless all of the following apply:
> . . . .
> (b) The sex offender has successfully completed all sex offender treatment programs that have been required.
> (c) A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.[1]

---

[1] Section 692A.128(6) also applies to this case. It states,

Iowa Code § 692A.128(2). These prerequisites to modification of the registration requirements are mandatory. Accordingly, we will review a court's conclusion on whether an applicant has satisfied the prerequisites for errors of law and the underlying fact findings for substantial evidence.

Assuming an applicant has satisfied these conditions, the court "may modify the registration requirements." *See id.* § 692A.128(5). The authority conferred by this provision is clearly discretionary. Accordingly, we will review the district court's ultimate conclusion granting or denying a modification application for an abuse of discretion.

### B. Conditions

Wallace takes issue with the district court's findings and conclusions on two conditions: (1) successful completion of sex offender treatment and (2) an assessment finding a low risk to reoffend.

*1. Successful Completion of Sex Offender Treatment*

The district court determined Wallace failed to successfully complete sex offender treatment. In part, the court relied on probation reports stating Wallace (a) did not perform well with "treatment and supervision" and (b) was "unable to successfully complete sex offender treatment and probation." These reports constitute substantial evidence in support of the district court's determination. While the final discharge report stated Wallace "had . . . satisfactorily complied

---

A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense, the offender is not under the supervision of . . . a judicial district judicial department of correctional services, and the department of corrections agrees to perform a risk assessment on the sex offender.

Iowa Code § 692A.128(6).

with the terms and conditions of supervision," the district court as fact-finder could determine what weight to assign each portion of the probation officer's report. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The function of the [fact finder] is to weigh the evidence and 'place credibility where it belongs.'") (citation omitted).

We recognize the reports were hearsay evidence. But Wallace concedes he stipulated to consideration of the entire court file, including the reports, and he simply argues "better evidence exists in the record[]." Again, it was up to the district court to weigh the evidence. *See id.* Because drug use was contraindicated for individuals participating in the sex offender treatment program, the court reasonably could have discounted the testimony of Wallace's expert—a former clinical director of the sex offender treatment program—that "the [probation] violation . . . certainly was not a violation that would constitute a concern with regard to sexual misconduct." *See id.*

Similarly, the court acted within its authority in ascribing less weight to the letter of Wallace's counselor than to the probation violation reports. The counselor essentially found that Wallace had addressed the concerns underlying the reports. But the preparer of the department of correctional services risk assessment disagreed, finding the conduct reflected in the reports were emblematic of a person who was simply "going through the motions." The preparer reached the following conclusion:

> Based on information obtained in his probation records, it is apparent that [Wallace] routinely violated treatment and probation rules, was charged with new crimes on two separate occasions, absconded from probation at one point, and was seen by his probation officer as doing quite poorly throughout his probation. He

was subsequently placed in individual treatment . . . as opposed to group sex offender treatment. Therefore, I would conclude, based on this information, that, although there is no information available stating that he failed treatment, there is compelling evidence that he did not ". . . successfully complete all sex offender treatment programs that have been required."

The court found the preparer's "testing and conclusions to be credible," albeit in a different context. This was the district court's prerogative. *See Mercy Hosp. v. Hansen, Lind & Meyer, P.C.*, 456 N.W.2d 666, 672 (Iowa 1990) (stating it was for the fact finder "to decide which of the experts was more credible, which used the more reliable data, and whose opinion—if any—the [fact-finder] would accept").

This brings us to the following appealing construct: successful completion of the sex offender treatment program was a prerequisite to discharge of Wallace's probation, Wallace discharged his probation, so he must have successfully completed sex offender treatment. While the district court could have adopted this construct, the court was not required to do so, given the equivocal statements in the probation violation reports and the risk assessment, which we will discuss next.

The probation violation reports and the report and testimony of the risk assessment preparer constitute substantial evidence in support of the determination that Wallace failed to successfully complete the sex offender treatment program. We affirm the district court's determination that section 692A.128(2)(b) was not satisfied.

*2. Risk Assessment*

The preparer of the department of correctional services risk assessment report concluded: "Actuarial risk assessments place [Wallace] at a Low-Medium

to Moderate risk level. . . . Based on the accumulated information obtained from this evaluation [Wallace] is not determined to be a Low risk offender at this time."

At the hearing, the preparer acknowledged errors in his scoring on certain tests. At the same time, he stood by his conclusion that Wallace was not a low-risk offender. He reasoned as follows:

> [Wallace] came to the Department of Correctional Services with many issues, concerns, drug use, acting out, criminal thinking, and there is not enough evidence to persuade me that anything has changed. There isn't that stability that we would be looking for. There's still marijuana use on a monthly basis, criminal behavior. And so there's just enough going on that I don't believe his risk has modified in the downward way that some offenders have with time off of supervision.

The district court found his testimony credible. While the court could have made a contrary finding based on the testing errors, credibility findings are within the purview of the district court. *See Shanahan*, 712 N.W.2d at 135.

We are left with the court's attempt to address the testing errors by rescoring Wallace. The court stated "if [Wallace's] risk scores were recomputed on either or both . . . validated risk assessments, then the risk scores would be increased and establish[] the defendant at an increased risk to sexually reoffend." In our view, it was up to the department of correctional services to perform the risk assessment; the court's role was simply to determine whether the risk assessment supported a determination of a low risk to reoffend. *See* Iowa Code § 692A.128(2)(c), (6). Accordingly, we decline to consider the discussion of rescoring or the evidence garnered in support of rescoring.

The preparer's risk assessment report and testimony constitutes substantial evidence in support of the district court's determination that Wallace

was not at low risk to reoffend. We affirm the district court's determination that section 692A.128(2)(c) was not satisfied.

### C. Modification Decision

The district court declined to modify Wallace's sex offender registration requirements. Because the court's key fact findings were supported by substantial evidence, the decision was not clearly untenable or clearly unreasonable. *See In re B.A.*, 737 N.W.2d 665, 667-68 (Iowa Ct. App. 2007). We conclude the district court did not abuse its discretion in denying the application to remove Wallace from the sex offender registry.

**AFFIRMED.**