# IN THE SUPREME COURT OF IOWA

No. 19–1721

Submitted February 16, 2021—Filed April 9, 2021

**RON FORTUNE,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Humboldt County, Kurt J. Stoebe, Judge.

Required sex offender registrant appeals denial by the district court of his application for modification of registry requirements. **REVERSED AND REMANDED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Philip B. Mears (argued) of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and John R. Lundquist (argued), Assistant Attorney General, for appellee.

**APPEL, Justice.**

In this case, Ronny Fortune appeals a decision of the district court denying his application under Iowa Code section 692A.128 (2018) to modify the requirement that he register as a sex offender. The question of the proper method of handling such modification applications has been a recurrent issue in the district courts.

In 2003, Fortune was convicted of three counts of lascivious acts with a child in violation of Iowa Code section 709.8 (2003). He was sentenced to three consecutive five-year sentences and two years of work release or parole. Although he entered an *Alford* plea to the criminal charges, Fortune told the evaluating professional conducting his risk assessment that he engaged in inappropriate sexual conduct with a seven-year-old child over the course of approximately two years.

As a result of his convictions, Fortune is a tier III sex offender. *See* Iowa Code § 692A.102(1)(*c*)(12) (2018). A tier III offender is required to report to the sheriff's office four times a year. *Id.* § 692A.108(1)(*c*). Because his offense was against a minor, he is subject to the exclusion zone restrictions set forth in Iowa Code section 692A.113. Finally, because his lascivious acts conviction qualified as an "aggravated offense," Fortune is subject to lifetime registration as a sex offender. Iowa Code §§ 692A.101(1)(*a*)(4), .106(5).

Fortune filed an application for modification of his sex offender registration requirements. After holding an evidentiary hearing, the district court denied Fortune's modification application. The district court denied a posttrial motion to reconsider, enlarge, or amend the findings. Fortune appealed. For the reasons expressed below, we vacate the order of the district court and remand for further proceedings.

**I. Background Facts and Proceedings.**

**A. Introduction.** After his conviction for three sexual offenses, Ronny Fortune was sentenced to three consecutive prison terms totaling fifteen years, with two years of work release. Fortune served his prison sentence, completed some sex offender treatment in prison, and was transferred to work release on June 9, 2009. Fortune was paroled on December 16. In January 2010 Fortune completed all sex offender treatment. He successfully completed parole and was discharged from his sentence on January 3, 2011.

On February 6, 2013, Fortune was convicted of disorderly conduct. The charge originated as a domestic abuse assault. On June 16, 2017, Fortune was convicted of failure to comply with the sex offender registry requirements. The charge arose from his failure to report an alias Facebook profile he created after Facebook took down the profile in his name as a result of a report to Facebook from Fortune's wife's ex-husband that Fortune was a sex offender.

On August 3, 2018, Fortune filed an application to modify his sex offender registration requirements in Humboldt County pursuant to Iowa Code section 692A.128.

**B. Department of Corrections Risk Assessments.**

1. *Overview.* The Iowa Department of Corrections (DOC) and the Department of Correctional Services (DCS) utilize three tools to assess the risk posed by sexual offenders: the STATIC-99R, the Iowa Sex Offense Risk Assessment (ISORA), and the STABLE 2007. DOC and DCS policy requires that all three tests be used in modification assessments.

In addition to these three tests, there are methods for "combined" scores. The STATIC-99R can be combined with the ISORA, and again with the STABLE 2007 for a composite score which is also generally described

in terms of risk.  Thus, in the usual workup in a modification matter, DOC and DCS provide five assessments based on tests or a combination of tests.

In this case, DCS's assessment for Fortune based on the above tools was as follows:

| | |
|---|---|
| STATIC-99R | Average risk |
| ISORA | Low risk |
| STATIC-99R/ISORA Combined | Low risk |
| STABLE 2007 | Low risk |
| STATIC-99R/STABLE 2007 Combined | Low risk. |

While the general category descriptors are helpful, the tests merit further examination for a full understanding of their meaning.

2.  *STATIC-99R.*  Two features of the STATIC-99R suggest that the general description of "average risk" may be overstated in Fortune's case.  First, the age of the offender is calculated at the time of release from prison.  At that time, Fortune was under 34.9 which earned him a point on the assessment and tended to make his evaluation less favorable.  At the time of the hearing, of course, Fortune was well over the age of 40.

In addition, the STATIC-99R assesses risk at the time of release from prison.  An offender's risk of reoffense declines the longer the offender has been released into the community without another sex offense.  Conviction of a nonsexual criminal offense, however, tends to lessen this decreased risk of reoffense.  For the STATIC-99R, the rate of reoffense for a person whose risk is rated as average is 4–8%.

3.  *ISORA.*  ISORA is a newer tool that was developed by the DOC in 2010.  On this test, Fortune scored a 2, which put him in the low-risk range to reoffend.  A DOC study found that individuals in the low-risk category have less than a 1% recidivism rate for another sexual offense.

4. *STABLE 2007.* STABLE 2007 is an additional scoring measure that is essentially a clinical impression based on the offender's interview with a qualified assessor. Fortune scored a 3 on that test. A score of 3 carries a low-risk designation.

5. *Combined scores.* According to DCS, combined scoring more effectively determines the recidivism risk level for males. On both combined scores, Fortune was classified as low risk.

### C. Testimony at the District Court Hearing.

1. *Ashley Lappe.* Ashley Lappe, a psychologist for the First Judicial District who prepared Fortune's assessment, testified at the hearing. She confirmed many details about the testing methodology described above. She indicated that the risk for sexual reoffending in general is cut in half for every five years of unsupervised release without sexual reoffending. She testified that Fortune's registration violation bothered her to some degree but that it would not impact the scores on the ISORA or STATIC-99R.

2. *Ronny Fortune.* Fortune testified that since his release from prison, he received a degree in criminal justice, training as a paramedic, and a degree in culinary arts and hospitality. He has been working full time since his release from prison in a glove factory, as a sales executive, and more recently in the culinary and hospitality sector.

Fortune married in 2013 and has four stepchildren with his wife. Prior to their marriage, Fortune's wife's ex-husband discovered that Fortune was on the registry and threatened to report them for child endangerment. Fortune and his wife met with a lawyer and they decided to get married. By getting married, Fortune could attend to the children without fear of a child endangerment offense.

Fortune testified about his violation of the sex offender registry provision in 2017. He stated that his wife's ex-husband reported him to Facebook and Facebook deleted his account. Fortune then created a Facebook profile using his mother's maiden name without notifying the sheriff.

Fortune testified that he volunteered as a paramedic for a year. During that time, he tried to become a volunteer firefighter. Due in part to the publicity surrounding his registration violation, he was told to wait until he was off the registry before becoming a volunteer firefighter.

**D. Ruling of the District Court.** The district court denied Fortune's application. In denying the application, the district court noted that Fortune's sex offender risk assessment test scores were not uniformly low risk, that he committed two offenses since his release from prison, that the circumstances of his marriage were alarming because of the presence of children in the home, that the nature of the underlying offense was appalling, that Fortune did not present a stipulation to modification from the DCS, that Fortune lacked remorse for the underlying offense and showed resentment of registration, and that Fortune did not present a compelling reason for release from the registry.

**II. Standard of Review.**

Iowa Code section 692A.128 provides that the district court may consider modification of the sex offender registration obligation if certain criteria are met. This initial threshold determination is reviewed for correction of errors at law. *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 79–80 (Iowa 2014). Any other questions involving interpretation of Iowa Code chapter 692A are also reviewable for correction of errors at law. *See Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013).

Once the initial threshold is met, the district court may grant modification. Iowa Code § 692A.128(5). As will be explained in greater detail below, the term "may" ordinarily vests the trial court with discretion. *See, e.g., State v. Adams*, 554 N.W.2d 686, 690 (Iowa 1996) ("The use of the word 'may' shows the legislature's intention to confer a discretionary power, not to impose a requirement."). "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *State v. Gomez Garcia*, 904 N.W.2d 172, 177 (Iowa 2017) (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000) (en banc)).

**III. Discussion.**

**A. Statutory Framework.** The provision for modification of sex offender registry requirements is contained in Iowa Code section 692A.128. The statute generally provides that in order to be considered for modification, the offender must satisfy several threshold requirements. *See id.* § 692A.128(2). First, the offender must have "successfully completed all sex offender treatment programs that have been required." *Id.* § 692A.128(2)(*b*). Second, the offender must show that "[a] risk assessment has been completed and the sex offender was classified as a low risk to reoffend." *Id.* § 692A.128(2)(*c*). Third, the offender must not be "incarcerated when the application is filed." *Id.* § 692A.128(2)(*d*).

In addition, for tier III offenders, such as Fortune, at least five years must have elapsed since the registration requirement began. *Id.* § 692A.128(2)(*a*). Finally, if a person is under the supervision of the DOC,

the applicant must obtain a stipulation from the judicial district DCS agreeing to the modification. *Id.* § 692A.128(2)(*e*).

When the threshold criteria have been met, the district court may proceed to consider modification of the registration requirements. *Id.* § 692A.128(5). Under Iowa Code section 692A.128(5) "[t]he court may, but is not required to, conduct a hearing on the application to hear any evidence deemed appropriate by the court. The court may modify the registration requirements under this chapter." The central question in this appeal is how the district court should treat an application for modification where the offender has met the statutory requirements.

**B. Positions of the Parties.**

1. *Fortune.* According to Fortune, the issue presented in this case is what kind of discretion exists, if any, after an offender has clearly established the listed statutory criteria for modification have been met. Fortune argues that once the initial criteria have been satisfied, there is essentially a presumption that the person should be modified off the registry.

Fortune asserts that the word "may" does not grant unlimited discretion. He emphasizes that the purpose of the statute "is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *Iowa Dist. Ct.*, 843 N.W.2d at 81.

Fortune points out that he has met all of the threshold requirements for modification. He argues that the label low risk is, in fact, "really low risk" because the risk to reoffend is in the low single digits, at the worst, according to the DOC assessment tools. He then claims that the district court should look only at the specific factors identified by the legislature in Iowa Code section 692A.128(2). Because he has met all the statutory

criteria to qualify for modification—completion of all required sex offender programming, a low-risk evaluation by the DOC, not incarcerated, and a five-year period since release from prison—Fortune argues he is entitled to modification.

In the alternative, Fortune asserts that even if the district court has discretion to consider factors other than the statutory criteria, these additional factors must relate to the applicant's risk of reoffending. So even assuming the district court has discretion to consider other factors, Fortune claims the district court gave insufficient weight to the fact that he was evaluated as a low-risk offender and met the other qualifications for modification. Fortune also claims the district court improperly considered or gave too much weight to Fortune's average-risk rating on the STATIC-99R considered in isolation from the other validated assessment tools, the failure of DCS to stipulate to modification, his two criminal offenses since his release, his 2013 marriage, the nature of his underlying sexual offense, his lack of remorse, and his lack of a compelling reasons for modification.

Based on the above errors, Fortune asks us to find that the district court abused its discretion in denying his application for modification. Fortune urges us to reverse the district court and remand with instructions to the district court to grant his application.

2. *State.* The State offers a different framework for considering modification petitions. The State does not contest that Fortune met the threshold requirements for modification in section 692A.128. But, according to the State, the mere fact that Fortune meets the statutory qualifications is not dispositive of the modification question. Instead, the State sees the statutory requirements as eligibility criteria. The State notes that if satisfaction of the statutory requirements alone were

adequate, the legislature would have provided that the district court "shall" grant the modification.

The State thus sees the word "may" as vesting broad discretion in the district court to consider many factors in determining the modification question. While the State recognizes that the discretion is not without limits, the State argues that the factors weighed in this case were sufficiently correlated to the public safety goals of Iowa Code chapter 692A to justify denial of Fortune's application.

**C. Proper Legal Framework for Evaluation of Modification Applications.** We begin our analysis with consideration of the proper legal framework for evaluation of modification petitions. In considering the proper framework, we consider the statute as a whole and seek to determine legislative intent from the language of the statute and its statutory context. *See, e.g.*, *In re A.J.M.*, 847 N.W.2d 601, 607 (Iowa 2014). We have stated in a number of contexts that the purpose of sex offender registration is to protect the public. Specifically, we have noted "the purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *Iowa Dist. Ct.*, 843 N.W.2d at 81; *see also In re A.J.M.*, 847 N.W.2d at 604 ("The paramount purpose of the sex offender registry requirement is to protect society from sex offenders after they have been released back into society following the disposition of their case.").

While the purpose of protecting the public supports the registration statute in general, the purpose of the modification provision is to permit some offenders, who are eligible, to obtain relief from the burdensome registration provisions. As we have noted, the eligibility for modification after statutory standards are satisfied "balances the registry's protective

purpose with our legislature's related recognition—in enacting the modification provision—of an individual's interest in removal from the registry when appropriate." *Iowa Dist. Ct.*, 843 N.W.2d at 84. In other words, the legislature has determined that for the purpose of modifying sex offender registration requirements imposed on sex offenders, one size does not fit all.

With these statutory purposes in mind, we now consider how the district court should approach modification applications. The first step for the district court is determining whether an applicant has met the gateway requirements of Iowa Code section 692A.128. If the statutory requirements are not met, that is the end of the matter and the district court must deny the modification. This determination of compliance with the statutory requirements by the district court is reviewable on appeal for errors at law. *Cf. Schafer*, 841 N.W.2d at 74 ("We review subject matter jurisdiction rulings for correction of errors at law."); *Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Co.*, 594 N.W.2d 22, 29 (Iowa 1999) ("This statute does not provide for the exercise of discretion by the district court; if the statutory prerequisites for arbitration are met, the court 'shall' order arbitration. Therefore, our review is for the correction of errors of law." (emphasis omitted) (citation omitted)).

If the applicant meets the threshold statutory requirements, the district court proceeds to the second step, namely, determining, in its discretion, whether the registration requirements should be modified. In this second step, the district court should consider the statutory factors and any other factors that the district court finds relevant to the modification issue. This second-step determination is reviewable on appeal for abuse of discretion. *See, e.g.*, *People v. Carbajal*, 312 P.3d 1183,

1190–91 (Colo. App. 2012); *White v. State*, 195 A.3d 108, 330 (N.H. 2018); *In re Hamilton*, 725 S.E.2d 393, 399 (N.C. Ct. App. 2012).

We come to these conclusions based upon the language and structure of the statute. Under section 692A.128(5), the district court may hold a hearing. At such a hearing, the district court is permitted to consider any evidence the district court deems appropriate. *Id.* Further, the legislature provided that the district court "may" grant modification, without further qualification. *Id.* This statutory trifecta of discretion compels us to reject the notion that if the statutory requirements are met, the district court must grant modification. Mandatory modification would be inconsistent with the discretionary language of the statute. *See Adams*, 554 N.W.2d at 690 ("The use of the word 'may' shows the legislature's intention to confer a discretionary power, not to impose a requirement."). No one doubts that the statutory requirements are certainly important factors to be considered by the district court on the ultimate issue of modification, but they cannot be considered exclusive factors. *See Matos v. State*, 184 So. 3d 1194, 1195 (Fla. Dist. Ct. App. 2015) (per curiam) (noting that the statute specifies a district court may grant modification if offender meets all statutory criteria but vests discretion for consideration of other factors).

We next consider what factors are relevant in deciding whether to grant or deny the petition for modification. The Iowa statute is silent on this issue. Other jurisdictions vesting discretionary authority in district courts to grant modifications from sex offender registration are more explicit but not always more helpful. *See generally* Wayne A. Logan, *Database Infamia: Exit from the Sex Offender Registries*, 2015 Wis. L. Rev. 219, 230–31 [hereinafter Logan]. For instance, a Mississippi statute requires that applicants must show they

> properly maintained [their] registration as required by law and that [the district court must determine that] future registration of the petitioner will not serve the purposes of this chapter and the court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.

Miss. Code Ann. § 45–33–47(3) (West, Westlaw current through 2021 Reg. Sess.). A Hawaii statute declares that applicants must show they have met statutory prerequisites, "substantially complied with registration requirements," "[are] very unlikely to commit a covered offense ever again," and registration "will not assist in protecting the safety of the public." Haw. Rev. Stat. Ann. § 846E–10(f)(1)–(4) (West, Westlaw current through Act 1 of the 2021 Reg. Sess.). A Virginia provision states that modification may be granted if the district "court is satisfied that such person no longer poses a risk to public safety." Va. Code Ann. § 9.1–910(B) (West, Westlaw current through 2021 Reg. Sess.). Although the Iowa statute does not use similar express language, we think these statements of statutory purpose behind the modification provisions of registration statutes similar to Iowa's provide a degree of insight as to potential approaches to the problem of the relevant factors for the district court to apply in considering applications for modification.

From the context, purpose, and text of the statute, and absent legislative guidance, we conclude the district court should consider only those factors that bear on whether the applicant is at low risk to reoffend and there is no substantial benefit to public safety in extending the registration requirements. We note that "low risk" does not mean *no risk*. As noted by one authority, "professional norms prohibit psychosexual evaluators from making 'statements asserting that [an individual] is no longer at any risk to reoffend.' " Logan, 2015 Wis. L. Rev. at 232 (quoting Ass'n for Treatment of Sexual Abusers, *Practice Standards and Guidelines for the Evaluation, Treatment, and Management of Adult Male Sexual*

*Abusers* 22 (2005)); *see also Patterson v. Foote*, 204 P.3d 97, 102 (Or. Ct. App. 2009) ("The requirement that the petitioner prove that he or she no longer poses a 'threat to the safety of the public' likewise provides no support for the state's insistence upon proof of a complete and total absence of a risk of reoffense."). And, conclusory appeals to public safety do not defeat a modification application. The threat to public safety must be tied to the individual applicant and the record established in each case.

In considering relevant factors, the district court has broad discretion, but that discretion is not unlimited. As Fortune suggests in his alternate argument, the discretionary regime in the modification statute has some similarities with criminal sentencing. Though the purposes of criminal sentencing and a modification are distinctly different (one to punish the offender, the other to protect the public), both permit the district court to consider a wide range of potentially relevant factors, provided those factors are rationally related to the underlying goals of the discretionary regime. *See State v. Roby*, 897 N.W.2d 127, 138 (Iowa 2017).

In a modification proceeding, once the statutory requirements have been met, the district court, in addition to compliance with the statutory requirements, may consider additional factors that are relevant to the question of whether the offender poses a sufficient risk of reoffense or that public safety would require the registration regime be continued to provide a degree of control on the offender and provide information to the public. Specifically, a district court commits an abuse of discretion when it fails to consider a relevant factor, or considers an improper or irrelevant factor, on the question of whether the ongoing risks of danger from the sex offender justifies continuation of the registration requirements. *See Roby*, 897 N.W.2d at 137. In the exercise of discretion under Iowa Code section 692A.128, the district court must take care to ensure that public safety,

and not punishment, provides the lens through which facts are evaluated. *See State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997) ("[T]he statute was motivated by concern for public safety, not to increase the punishment."). Where only proper factors have been considered, we find an abuse of discretion only where there is a clear error of judgment. *Roby*, 897 N.W.2d at 137. The district court's stated reasons for a decision on modification must be sufficient "to allow appellate review of the trial court's discretionary action." *Cf. State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010) (applying the principle to a sentencing case).

**D. Application of Legal Principles.** We now proceed to apply the above legal principles to Fortune's specific challenges in this case, namely, that the district court abused its discretion in denying relief. Based on our review of the record, we conclude that the district court improperly considered a number of factors in the modification proceeding.

Fortune questions the district court's treatment of his risk assessment conducted by DCS. The district court found the fact that the STATIC-99R demonstrated average risk was significant. But the testimony at the hearing by the State's psychologist clearly established that Fortune should be categorized as a low-risk offender, that the composite assessments classifying him as a low-risk offender were more weighty than individual tools, and that the STATIC-99R overstated his risk in light of the years that had elapsed since his release from prison and his advancing age.

The district court originally stated in the order that this factor was determinative, and then later backpedaled. In context, we think the fact that Fortune's STATIC-99R was not low risk must be considered in its complete context. On balance, based on the available validated empirical tools as appropriately adjusted, the State's psychologist testified that

Fortune is a low-risk offender, a factor that the legislature had determined makes him eligible for, but does not require, modification. The district court cannot disqualify Fortune from eligibility for modification for his assessment that meets the statutory requirement for consideration as a low-risk offender. To the extent the district court reached a contrary conclusion, it committed legal error.

Fortune chastises the district court for twice mentioning in its order that DCS did not make a recommendation with respect to Fortune's modification application. But Fortune's assessment prepared by DCS states that the department did not stipulate because "Mr. Fortune is not currently under supervision." In response to Fortune's rule 1.904 motion challenging the district court's reliance on the lack of stipulation, the district court stated that the discussion in its order was simply a part of the narrative. Because we are remanding this case to the district court, it is not necessary to determine the extent to which the district court regarded the factor as significant. On remand, we are confident that the district court will give no weight to this factor.

Fortune questions the district court's reliance on his two criminal convictions as consideration of improper factors. On this point, we agree with the State. The 2013 simple misdemeanor is not described in detail and happened years prior to the hearing, but we cannot say the district court abused its discretion in giving the offense some consideration. *But see Carbajal,* 312 P.3d at 1192 (holding that district court consideration of trespass conviction was an improper factor in its discretion to grant modification if it was "the sole basis for continuing to impose registration."). Similarly, the district court did not abuse its discretion in taking into consideration the 2017 parole violation, which shows that Fortune engaged in an effort to work around the Facebook policy of

denying access to its platform for sex offenders. These convictions were appropriately considered by the district court in making its assessment of the future risk posed should modification be granted.

On Fortune's claim that the district court improperly considered the facts and circumstances surrounding his marriage, we agree. The fact that Fortune had been married for more than six years and was participating in normal family life ordinarily would be considered a positive factor for Fortune. While it is true that he married after learning from a lawyer that by doing so he would avoid a potential criminal charge of child endangerment, there is no evidence in the record that he violated the law at any time surrounding the date of his marriage or that the department of human services had unanswered concerns as suggested by the district court. To the extent there may have been a whiff of suspicion in 2013 arising from a quick marriage, that whiff has dissipated after a six-year marriage and family life without incident. We do not think his marriage six years ago can be considered a risk factor today to justify the continuation of registration requirements. We conclude the district court erred when it considered his marriage as a factor weighing against modification based on the record developed before the district court.

With respect to Fortune's attack on the district court's emphasis on the underlying nature of the offense, we think the results of the risk assessment tools should not generally be overridden by nonvalidated risk assessments made by the district court based upon the nature of the crime and its apparent relationship to recidivism. First, consideration of the nature of the crime comes perilously close to punishment, an impermissible goal of the sex offender registration. Further, the nature of the crime has already been factored into the equation in two ways. First, as a tier III offender, Fortune must have at least five years in the

community without reoffense to be eligible for modification compared to shorter periods of time for less serious offenses. Iowa Code § 692A.128(2)(*a*). Second, the nature of the crime is a factor considered in the validated assessment tools. District courts should be cautious in rejecting the validated risk assessments based on a case-by-case judicial impression of the underlying offense.[1]

In some cases, however, it may be possible to identify increased risk based upon what appears to be repeated patterns of behavior. For example, an offender might be engaging in what is ordinarily innocent behavior that looks more suspicious in light of the facts of the underlying crime. For instance, an offender who loiters at the same location as a past offense might raise concerns. To that extent, the similarity of patterns between past offenses and present behavior could be quite relevant. The focus, however, must be on the present danger or threat to public safety, not on punitive response to past crime.

Another factor relied upon by the district court was Fortune's lack of remorse. The record developed in this case, however, does not demonstrate a lack of remorse. When Fortune testified, neither party asked him questions regarding the topic, nor did the State make an argument about his lack of remorse at the hearing. It seems to have been

---

[1]There is a body of empirical evidence related to the question of recidivism among sexual offenders. *See, e.g.,* Kim Steven Hunt & Robert Dumville, U.S. Sent'g Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf [https://perma.cc/5SDL-SK73]; Patrick A. Langan et al., U.S. Dep't of Just., *Recidivism of Sex Offenders Released from Prison in 1994* (2003), http://www.bjs.gov/content/pub/pdf/rsorp94.pdf [https://perma.cc/3RFW-DKR7]; Elizabeth J. Letourneau et al., Med. U. S.C., *Evaluating the Effectiveness of Sex Offender Registration and Notification Policies for Reducing Sexual Violence Against Women* (2010), https://www.ojp.gov/pdffiles1/nij/grants/231989.pdf [https://perma.cc/9WGU-DW4C]; Roger Przybylski, U.S. Dep't of Just., *Recidivism of Adult Sexual Offenders* (2015), https://www.smart.gov/pdfs/RecidivismofAdultSexualOffenders.pdf [https://perma.cc/RW5S-NSV6].

a nonissue to the parties. Further, the record shows that Fortune successfully completed SOTP, which generally requires that an offender confront his responsibility for past offenses. On the record developed in this case, the district court erred in relying on a lack of remorse that did not have a factual basis in the record.

Finally, the district court found that the reasons offered by Fortune were not compelling. Fortune stated that he wanted to be a first responder or volunteer firefighter but was advised to first get off the sex offender registry. He also wanted to participate more freely in the school activities of his stepchildren.

The provisions of sex offender registration are onerous. The direct and collateral consequences of sex offender registration include stigmatization, challenges in finding employment, restrictions on residency and movement, and difficulty in finding housing. *See* Elizabeth Reiner Platt, *Gangsters to Greyhounds: The Past, Present, and Future of Offender Registration*, 37 N.Y.U. Rev. L. & Soc. Change 727, 759–64 (2013). In Fortune's case, he is not only required to report quarterly, but he must also comply with various other restrictions, including those related to attendance at school events. Any person in his position would desire to be relieved of the legal restrictions. We do not see the lack of a "compelling reason" as a proper factor to consider in denying Fortune's request for modification. Further, we see nothing nefarious about Fortune's prosocial desire to contribute back to his community in the fashion he proposes.

The district court did not have the benefit of the guidance provided today. Based on the above discussion, we vacate the district court's order and remand the case for further proceedings.

On remand, the district court will reassess the merits of Fortune's modification application consistent within the framework and analysis

provided in this opinion. The ultimate disposition does not depend solely upon compliance with the mandatory threshold requirements of Iowa Code section 692A.128 but lies in the discretion of the district court in light of the purposes of the registration statute and the modification provision fashioned by the legislature.

**IV. Conclusion.**

For the above reasons, the decision of the district court is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**