# IN THE SUPREME COURT OF IOWA

No. 22–0789

Submitted February 22, 2023—Filed April 14, 2023

**LAURA BELIN, BLEEDING HEARTLAND LLC, CLARK KAUFFMAN, IOWA CAPITAL DISPATCH, RANDY EVANS,** and **IOWA FREEDOM OF INFORMATION COUNCIL,**

Appellees,

vs.

**GOVERNOR KIM REYNOLDS, MICHAEL BOAL, PAT GARRETT, ALEX MURPHY,** and **OFFICE OF THE GOVERNOR OF THE STATE OF IOWA,**

Appellants.

---

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

The Governor of Iowa, her office, and some of her staff members seek interlocutory review of the district court's refusal to dismiss claims of open records violations. **AFFIRMED AS MODIFIED AND REMANDED WITH INSTRUCTIONS.**

May, J., delivered the opinion of the court, in which all participating justices joined. Mansfield, J., took no part in the consideration or decision of the case.

Brenna Bird, Attorney General, Samuel P. Langholz, Deputy Attorney General, and Eric Wessan (argued), Solicitor General, for appellants.

Thomas D. Story (argued), Rita Bettis Austen, and Leah Patton (until withdrawal) of ACLU Foundation of Iowa, Inc., Des Moines, for appellees.

**MAY, Justice.**

The Iowa General Assembly has determined that "free and open examination of public records is generally in the public interest." Iowa Code § 22.8(3) (2021). To help Iowans gain access to public records, the general assembly enacted Iowa Code chapter 22, Iowa's Open Records Act. The Act provides a relatively simple process for citizens to request public records from government entities. And, with limited exceptions, the Act requires those entities to honor citizens' requests by providing requested records. If an entity refuses, the requesting citizen may sue.

This case is about *when* the records must be produced. In 2020 and 2021, the plaintiffs requested public records from the defendants. In December 2021, the plaintiffs filed this suit under the Open Records Act. Then, in January 2022, the defendants provided responsive records. Because they have now produced responsive records, the defendants contend that they are no longer subject to suit. The plaintiffs respond that the defendants violated the Act through their *delays*, that is, the gaps of time between the plaintiffs' requests and the defendants' production of records. The plaintiffs say that those gaps ranged from five to eighteen months.

We conclude that the Act may permit the plaintiffs to pursue claims based on untimeliness. The district court was right to deny the defendants' motion to dismiss. We remand for further proceedings consistent with this opinion.

**I. Background.**

The plaintiffs are three journalists (Laura Belin, Clark Kauffman, and Randy Evans), two news organizations (Bleeding Heartland, LLC, and Iowa Capital Dispatch), and a nonprofit organization (Iowa Freedom of Information Council (FOIC)). The defendants are Governor Kim Reynolds, three members of the Governor's staff (Michael Boal, Pat Garrett, and Alex Murphy), and a government entity (the Office of the Governor of the State of Iowa).

The plaintiffs allege that they emailed eight different open-records requests to the defendants.[1] Each request covered a different topic.[2] The first request was sent in April 2020. The last was sent in April 2021.

Each of the eight requests was renewed at least once. By "renewed," we mean that the plaintiffs sent follow-up emails to check on the status of their requests. Some requests were renewed several times. The last renewal occurred in August 2021.

In December 2021, the plaintiffs commenced this action by filing a petition in district court. They alleged that the defendants had violated the Open Records Act by failing to provide the requested records. They also alleged that "[e]ven if

---

[1]Belin and Bleeding Heartland sent five requests; Kauffman and Iowa Capital Dispatch sent two; Evans and FOIC sent one.

[2]Belin and Bleeding Heartland's requests concerned information distributed to employees at food processing plants in Spring 2020, the Governor's decision to sign or veto a bill concerning electric transmission lines, responses by the Governor's office to requests by other news organizations and reporters, charity events at Terrace Hill, and communications regarding Senate File 567. Kauffman and Iowa Capital Dispatch's requests concerned the use of Terrace Hill for a charitable auction, and Timon Oujiri, the former director of the Iowa Veteran's Home. Evans and FOIC's request concerned authorization for the deployment of the Iowa State Patrol to work in Texas.

Defendants were to provide" the requested records after the filing of their suit, the defendants had *already* violated chapter 22 by failing to provide the records "promptly and timely." As relief, the plaintiffs sought mandamus, declaratory judgment, injunctive relief, court costs, and attorney fees.

The defendants filed a motion to dismiss. Among other things, the defendants argued that the plaintiffs' claims were now "moot because they've received their requested records." As support, the defendants filed an affidavit. It explained that the Governor's office had responded to the plaintiffs' requests and provided responsive records on or about January 3, 2022.

The defendants also argued that even if timeliness claims aren't moot, those claims still fail "when brought against the Governor" because they present "a nonjusticiable political question." Moreover, the defendants claimed that interpreting chapter 22 to permit timeliness claims would "infringe on the Governor's executive privilege."

The plaintiffs resisted. They argued that the case was not moot because the defendants had not provided all of the requested records. Rather, the defendants had "redacted and withheld several" requested records under claims of confidentiality even though, in the plaintiffs' view, "[t]he time to withhold documents . . . ha[d] long passed." Moreover, the plaintiffs claimed that—even with regard to documents that had already been produced—they could still pursue claims for "unlawful delay" in responding to their requests. The plaintiffs also rejected the defendants' arguments about nonjusticiable political questions and executive privilege.

The district court denied defendants' motion. The defendants then asked our court to grant interlocutory review. We granted the defendants' request. Before we granted interlocutory review, though, the plaintiffs filed their first amended petition in the district court. It repeated the plaintiffs' original allegations. It also incorporated additional points raised in the plaintiffs' resistance to the motion to dismiss.

**II. Merits.**

We review the district court's denial of the defendants' motion to dismiss for errors of law. *See Meade v. Christie*, 974 N.W.2d 770, 774–75 (Iowa 2022) ("We review a district court's ruling on a motion to dismiss to correct legal error."). The basic question is whether any of the plaintiffs' claims fail as a matter of law and, therefore, must be dismissed. *See id.* at 775 ("A motion to dismiss challenges a petition's legal sufficiency."). At the motion-to-dismiss stage, we accept the plaintiffs' factual allegations as true and we view them in the light most favorable to the plaintiffs. *See id.*

Before we address the plaintiffs' claims individually, we think a general sketch is appropriate. Speaking broadly, the plaintiffs are pursuing two kinds of claims: (1) claims of *insufficient* production, that is, failure to produce records; and (2) claims for *delay* in producing records. The plaintiffs' *insufficiency* claims can be further divided into (a) claims about the records that *have* now been produced, and (b) claims about records that still haven't been produced—or that have been produced only in a redacted state—because defendants claim they are confidential. Similarly, the plaintiffs' *delay* claims can be divided into (a) claims

about the defendants' delay in asserting their confidentiality objections, and (b) claims about the defendants' delay in actually producing records. We address each category of claims in turn.

**A. Insufficiency Claims.** We begin with the claims at the center of the plaintiffs' original petition, namely, claims that the defendants had failed to produce the records that the plaintiffs had requested. As explained, circumstances have changed since the filing of the plaintiffs' original petition. As the plaintiffs acknowledge, the defendants have now produced *many* of those records. And so, the defendants believe, any claims about *production* of those records are now moot.

On this issue, we generally agree with the defendants. "One familiar principle of judicial restraint is that courts do not decide cases when the underlying controversy is moot." *Rhiner v. State*, 703 N.W.2d 174, 176 (Iowa 2005). "If an appeal no longer presents a justiciable controversy because the disputed issue has become academic or nonexistent, the appeal is ordinarily deemed moot." *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014). "The key in assessing whether an appeal is moot is determining whether the opinion would be of force or effect in the underlying controversy." *State v. Avalos Valdez*, 934 N.W.2d 585, 589 (Iowa 2019) (quoting *Puntenney v. Iowa Utils. Bd.*, 928 N.W.2d 829, 840 (Iowa 2019)).

We believe that most of the claims concerning production of already-produced records are now moot. They are moot because an order to produce already-produced records would have no "force or effect in the underlying

controversy." *Id.* (quoting *Puntenney*, 928 N.W.2d at 840). Also, we conclude that no mootness exception should apply. *See Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296–98 (Iowa 2022) (discussing exceptions). We have recognized "[a]n exception to the general rule [against deciding moot cases] exists where matters of public importance are presented and the problem is likely to recur." *Homan v. Branstad*, 864 N.W.2d 321, 330 (Iowa 2015) (second alteration in original) (quoting *In re Guardianship of Kennedy*, 845 N.W.2d 707, 711 (Iowa 2014)). But we do not worry that the defendants will withhold the already-produced records in the future. *See id.* And we see no important public interest in further litigation about whether the defendants should produce records that they have already produced. *See id.* We also emphasize the "great respect" that we owe to the executive branch. *See id.* at 332. "Part of that respect involves not telling" the Governor and her staff "what they can and cannot do unless the answer is likely to matter in this or a future case." *Id.*

We add two caveats. First, and most broadly, we do not believe mootness applies to any of the plaintiffs' other claims. Although mootness prevents the issuance of a court order *to produce* the already-produced records, mootness would not bar any other relief that may be available under the Act, e.g., attorney fees incurred in filing suit to compel production. *See Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 705 (Iowa 2022).

Second, and more particularly, we emphasize that our finding of mootness only applies to records that *have* been produced *without redaction*. It is undisputed that the defendants have withheld or redacted some requested

records based on claims of confidentiality. The parties agree that the district court must still determine whether the defendants must produce those records in unredacted form. We entrust those issues to the district court in the first instance.

We believe it is appropriate to mention, though, that one aspect of the dispute appears to have been resolved. In their district court filings, the plaintiffs drew attention to section 22.8(4)(*d*), which states:

> 4. Good-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation of this chapter if the purpose of the delay is any of the following:
>
> . . . .
>
> *d.* To determine whether a confidential record should be available for inspection and copying to the person requesting the right to do so. A reasonable delay for this purpose shall not exceed twenty calendar days and ordinarily should not exceed ten business days.

Iowa Code § 22.8(4)(*d*).

The plaintiffs asserted that section 22.8(4)(*d*) imposes a twenty-day "deadline" before which defendants were obligated to raise any claim of confidentiality. The plaintiffs also suggested that because the defendants' January 2022 assertions of confidentially occurred "clearly outside of the twenty-day timeframe," the defendants had "waived the ability to withhold and redact records" that would otherwise be confidential under section 22.7.

On appeal, the defendants ask us to hold that no such waiver could have occurred. The defendants note that "nothing in chapter 22 provides—or even suggests—that the consequence for failing to respond on time would be to make

an otherwise confidential document public. That interpretation would be absurd," the defendants contend, "and would eviscerate the many confidentiality protections" provided by Iowa law. For instance, "[i]t would mean that a delayed response by a school would leave student records unprotected." Or that a healthcare provider's delay could lead to "personal medical and treatment records [being] forced into the open."

In their responsive brief, the plaintiffs clarify their position on this issue. They maintain that the defendants' failure to assert their confidentiality claims in a timely manner "is a further instance of [the defendants'] untimeliness in responding to open records requests" and, therefore, "a violation of Chapter 22." But plaintiffs clarify that "[t]his untimeliness does not mean that otherwise confidential records must be produced and made public." The plaintiffs further clarify that they "do not seek disclosure of records which are determined to be properly designated as confidential."

In light of these clarifications, we need not decide whether—in some other case—untimely assertion of confidentiality could lead to waiver of the protections available under section 22.7. For purposes of this case, the answer is "no."

**B. Delay Claims.** We now turn to the most contentious issue in this case: Can the plaintiffs pursue claims that the defendants violated chapter 22 through delays in responding to the plaintiffs' open record requests? With some qualifications, we believe the answer is "yes."

1. *General principles.* Iowa's Open Records Act is codified in Iowa Code chapter 22. "[T]he policy of [chapter 22 is] that free and open examination of

public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others." Iowa Code § 22.8(3).

The Act gives "[e]very person [a] right" to examine, copy, and publish "a public record." *Id.* § 22.2(1). Section 22.1 defines "[p]ublic record[]" to include "all records, documents," and "other information . . . of or belonging to this state" or "any" of its "branch[es]" or "department[s]." *Id.* § 22.1(3)(*a*). But section 22.7 deems certain documents—like medical records or school records—to be confidential and, therefore, generally protected from disclosure. *Id.* § 22.7.

Iowans may exercise their rights under the Act by requesting records from the records' "lawful custodian." *Id.* § 22.3(1). A request can be made in person, "in writing, by telephone, or by electronic means." *Id.* The "[l]awful custodian [is] the government body currently in physical possession of the public record." *Id.* § 22.1(2). "Each government body" must "delegate to particular officials or employees . . . the responsibility for implementing the requirements of" the Act. *Id.* The identities of those "particular officials or employees" must be publicly announced. *Id.*

If a request is refused, an "aggrieved person . . . may seek judicial enforcement of the requirements of [the Act] in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances." *Id.* § 22.10(1). Section 22.10(2) explains the trial process:

> Once a party seeking judicial enforcement of [the Act] demonstrates to the court that the defendant is subject to the requirements of [the Act], that the records in question are government records, and that the defendant refused to make those government records available for examination and copying by the plaintiff, the burden of going forward shall be on the defendant to demonstrate compliance with the requirements of [the Act].

*Id.* § 22.10(2).

So, as section 22.10(2) makes clear, a plaintiff's burden is to demonstrate three elements: (1) that "the defendant is subject to the requirements of" the Act, (2) "that the records in question are government records," and (3) "that the defendant refused to make those government records available for examination and copying by the plaintiff." *Id.* Then, the burden shifts to the defendant "to demonstrate compliance with the requirements of" the Act. *Id.* For instance, in *Ripperger v. Iowa Public Information Board*, a county assessor carried this burden by showing that certain records qualified as "confidential record[s]" under section 22.7(18) and, therefore, withholding the records did not violate the Act. 967 N.W.2d 540, 554–55 (Iowa 2021).

Notably, though, the assessor in *Ripperger* had *expressly* refused to produce the requested records. *Id.* at 544. The question here is whether chapter 22 allows a plaintiff to sue when there is no express refusal but yet the defendant fails to produce the records for an extended period of time.

To find the answer, we must look to the "text of the statute," the "words chosen by the legislature." *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017) (quoting *State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007)). As explained, the words of section 22.10(2) make it clear that when—as here—a defendant is

subject to the Act and the records sought "are government records," the plaintiff's only burden is to demonstrate "that the defendant *refused* to make those government records available." Iowa Code § 22.10(2) (emphasis added). The crucial word, then, is "refused." We must determine its "ordinary and fair meaning." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020).

Of course, the ordinary and fair meaning of refusal can include an *explicit* refusal, as occurred in *Ripperger. See* 967 N.W.2d at 545. But refusal can also be *implied.* The idea of a "silent refusal" is not foreign to English speakers.[3] And dictionaries confirm that a "refusal" can either be stated or *shown. See Refuse, Webster's Third New International Dictionary* 1910 (unabr. ed. 2002) (defining "refuse" to include "*show*[ing] or express[ing] a positive unwillingness to do or comply with" (emphasis added)); *see also Refuse, Britannica Dictionary*, https://www.britannica.com/dictionary/refuse [https://perma.cc/S9BE-BV4T] (defining "refuse" to include "say[ing] or *show*[ing] that you are not willing to do something that someone wants you to do" (emphasis added)); *Refuse, Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/refuse

---

[3]*See, e.g., Ass'n for Accessible Meds. v. James*, 974 F.3d 216, 226 (2d Cir. 2020) ("But the legislature's silent refusal to call a tax a tax, even though it raises revenue to provide a clear general public benefit, is less significant to our inquiry."); *Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Ass'n*, 222 Cal. Rptr. 3d 1, 27 (Ct. App. 2017) ("Fannie Mae's silent refusals to accept tender were also privileged as they communicated Fannie Mae's rejection of the settlement offers and were responses to Crossroads' scheme to have the court approve its plan in lieu of proceeding through nonjudicial foreclosure."); *People v. Sherer*, 452 P.3d 218, 222 (Colo. 2019) ("Garland received from Respondent sporadic and untimely communication, no work of any value, and a silent refusal to return her unearned retainer."); *Smith v. State*, No. 82A05–1709–PC–2123, 2018 WL 1076797, at *4 (Ind. Ct. App. Feb. 28, 2018) ("In other words, the alleged *Doyle* violation in *Sylvester* did not involve the State's use of the defendant's silent refusal to answer questions to impeach him."); *Henry v. Greater Ouachita Water Co.*, 349 So. 3d 123, 132 (La. Ct. App. 2022) ("Instead, the record reflects a silent refusal on their part to even attempt adequate discovery responses.").

[https://perma.cc/57PA-MS74] (noting that, as an intransitive verb, "refuse" can mean "to say *or show* that you are not willing to do, accept, or allow something" (emphasis added and omitted)); *Refuse, Collins,* https://www.collinsdictionary.com/us/dictionary/english/refuse [https://perma.cc/4HGM-BSMT] ("If you refuse to do something, *you deliberately do not do it,* or you say firmly that you will not do it." (emphasis added and omitted)).

We conclude that a defendant may "refuse" either by (1) stating that it won't produce records, or (2) showing that it won't produce records. And we believe that this second kind of refusal—an implied or "silent" refusal—can be shown through an unreasonable delay in producing records. *See* 2B Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 55:3, at 457 (7th ed. 2012) [hereinafter Singer & Singer] ("If a statute imposes a duty but is silent as to when it is to be performed, a reasonable time is implied."). This view is consistent with our observation in *Horsfield Materials, Inc. v. City of Dyersville* that

> [a]lthough section 22.10(2) speaks in terms of a refusal rather than a delay in production, we think a refusal to produce encompasses the situation where, as here, a substantial amount of time has elapsed since the records were requested and the records have not been produced at the time the requesting party files suit under the Act.

834 N.W.2d 444, 463 n.6 (Iowa 2013).

It is also consistent with the text of chapter 22 as a whole. As noted, section 22.8(4) outlines narrow circumstances in which "[g]ood-faith, *reasonable* delay by a lawful custodian in permitting the examination and copying of a

government record is not a violation of this chapter." Iowa Code § 22.8(4) (emphasis added). This implies that *unreasonable* delay can constitute a violation.

It is also consistent with the legislature's stated policy, namely, to encourage the "free and open examination of public records." *Id.* § 22.8(3). An interpretation that requires timely production promotes "free and open examination of public records." *Id.* An interpretation that condones unlimited delay would hamper the "free and open examination of public records." *Id.*; *see also* Brenna Findley, *Practical Observations on Politics and the Constitution*, 61 Drake L. Rev. 1085, 1089 (2013) ("Providing information quickly and efficiently demystifies government.").

In summary, when a court evaluates whether a plaintiff has carried its burden under section 22.10(2), the relevant questions are: (1) Is the defendant "subject to the requirements of" chapter 22?; (2) Did the plaintiff ask for "government records"?; and (3) Has "the defendant refused to make those government records available" for the plaintiff? Iowa Code § 22.10(2). The third element can be established either through an express refusal or through an implicit refusal. Extensive delay may—on its own—establish an implicit refusal. But other evidence may also be relevant when deciding whether, in the words of the statute, "the defendant *refused* to make th[e] government records available." *Id.* (emphasis added). Relevant inquiries may include: (1) how promptly the defendant acknowledged the plaintiff's requests and follow-up inquiries, (2) whether the defendant assured the plaintiff of the defendant's intent to

provide the requested records, (3) whether the defendant explained why requested records weren't immediately available (e.g., what searches needed to be performed or what other obstacles needed to be overcome), (4) whether the defendant produced records as they became available (sometimes called "rolling production"), (5) whether the defendant updated the plaintiff on efforts to obtain and produce records, and (6) whether the defendant provided information about when records could be expected.

2. *Electronic records.* The defendants contend that even if timeliness claims can be available in some situations, they are unavailable when electronic records are involved. The defendants note that "[i]n section 22.3A, the Legislature crafted an extensive statutory scheme for electronic records." And section 22.3A does not specify a particular deadline for production. The defendants infer that chapter 22 imposes no timeliness requirements for electronic records. There is "no textual basis," the defendants contend, "for a timeliness claim based on a request for electronic records."

We disagree. For one thing, it is well-established that "[i]f a statute imposes a duty but is silent as to when it is to be performed, a reasonable time is implied." Singer & Singer, § 55:3, at 457. Because section 22.3A does not specify a particular deadline for production, a "reasonable time" requirement may be inferred. *See id.*

Moreover, as explained, the text of section 22.10(2) allows a plaintiff to establish a prima facie case by showing that a government body "refused" access to public records. Iowa Code § 22.10(2). And, as discussed, unreasonable delay

can imply a refusal. As a general matter, then, chapter 22 *does* include textual grounds for a timeliness claim. And nothing in chapter 22 suggests that electronic-record requests should be exempted. Nothing in 22.10(2) suggests that its analysis applies only to paper records. Nor does section 22.3A supplant or even mention section 22.10. Rather, section 22.10 governs all claims for public records, electronic or not.

3. *Constitutional concerns.* Defendants also argue that *even if* timeliness claims are generally available for electronic records, they should not be available against the Governor. To be clear, the Governor has not claimed general immunity from the requirements of chapter 22. Nor does she "contend that the Legislature is prohibited from imposing a deadline on the Governor to respond to open records requests." Nor does she deny that, as a general matter, the courts are obligated to hear claims against the Governor, decide whether those claims have merit, and, if appropriate, impose legislatively-prescribed sanctions.

Rather, the Governor contends that "*if* chapter 22 [imposes] an amorphous reasonableness standard for assessing the timeliness of responses to open-records requests, such a standard cannot be applied to the Governor. It would violate the separation of powers by enmeshing the courts in answering a political question." By this, the Governor means that gauging the reasonableness of her response times would require an inquiry into her *processes,* e.g., "how the Governor and her staff—including her senior legal counsel—were spending their time," and "whether her allocation of resources between responding to open-records requests and her other governing responsibilities was reasonable." In the

Governor's view, these are nonjusticiable issues. They are entrusted exclusively to her, not the courts. *See State ex rel. Dickey v. Besler*, 954 N.W.2d 425, 435 (Iowa 2021) ("Normally we apply the political question doctrine when a matter is entrusted exclusively to the legislative branch, to the executive branch, or to both of them. The term 'nonjusticiable' implies that a question is not suitable for *judicial* resolution.").

Along similar lines, the Governor warns that "[r]equiring the Governor to prove the reasonableness of her response time . . . would . . . infringe on her executive privilege by requiring her to disclose protected information." *Cf. Ryan v. Wilson*, 300 N.W. 707, 715 (Iowa 1941) (holding that the governor "acting strictly in the line of his official duties . . . was protected" by an "absolute privilege" against defamation claims). Here again, the Governor is concerned that the court could not decide timeliness claims without considering "substantial details about what the Governor and her staff were spending their time doing in relation to their time on Plaintiffs' requests," and "why the Governor decided to allocate her staff resources in that way."

In short, the Governor believes that the "reasonableness of her response time" can't be litigated without violating our constitution. And so, to avoid a constitutional conflict, we should conclude that chapter 22 does not permit the plaintiffs' claims of untimeliness. *See State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014) ("The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of 'constitutional shoals' when possible.") (quoting *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa

2010))); *Simmons*, 791 N.W.2d at 74 ("If fairly possible, a statute will be construed to avoid doubt as to constitutionality.").

We disagree. As explained, a plaintiff's case requires only a showing that: (1) the defendant is "subject to the requirements of" chapter 22, (2) the request seeks "government records," and (3) "the defendant refused to make those government records available" for the plaintiff. Iowa Code § 22.10(2). None of these inquiries requires intrusion into the defendant's decision-making processes. Rather, where (as here) it is clear that the plaintiffs have sought government records from defendants who are subject to the requirements of chapter 22, the only question is whether the defendants "refused to make those government records available." *Id.* The answer should depend on how the defendants *responded.* It should depend on the defendants' *outward behavior* toward the requesting plaintiffs. It should not depend on the defendants' *thinking.* It should not depend on the defendants' *internal* conversations. It should not depend on any of the inner workings of the Governor's office. It should not depend on political questions, like whether the Governor properly allocated resources when staffing her office. And it should not depend on potentially privileged information, like the details of how the Governor was spending her time, or what she discussed with her lawyers.

But what about a defendant's case? Once the plaintiff establishes a prima facie case, "the burden of going forward [is] on the defendant to demonstrate compliance with the requirements of" chapter 22. *Id.* Does this require an inquiry into confidential information?

We don't think so. To begin with, once the plaintiff establishes a prima facie case, the defendant must decide how to proceed. The defendant may put on evidence or not. If the defendant presents no new evidence, then, of course, no new inquiries are required.

Assuming a defendant seeks to "demonstrate compliance," though, we still think the inquiry should generally turn on objective public facts. For instance, assuming there are no timeliness issues, a defendant might demonstrate compliance simply by showing that it already produced all of the requested records that it possesses. Or, as in *Ripperger*, the defendant may demonstrate compliance by showing that the only records it withheld are confidential under section 22.7. Or, in the case of delayed production, the defendant may rely on section 22.8 which, as noted, outlines narrow circumstances in which "[g]ood-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation of this chapter." *Id.* § 22.8(4). We doubt that any of these showings would require substantial inquiries into a defendant's resource-allocation choices or any other confidential decision-making. They should not require us to wander in constitutional minefields.

But the defendants worry that our *Horsfield* opinion requires just that. In that case, the district court followed a "substantial compliance" standard when evaluating whether a city's production of records was untimely. *See Horsfield*, 834 N.W.2d at 451. And the district court concluded that because the city had "substantially compl[ied]," it had not violated the Act. *Id.* On appeal, the plaintiff did not argue for a different standard. *Id.* at 462. "In light of this concession,"

our court "utilize[d] substantial compliance . . . assuming without deciding that it [was] the appropriate test." *Id.* Ultimately, we found that the city did not meet its burden of showing substantial compliance. *Id.* In large part, this finding was based on the lack of detail in the record about "how much time it really took city officials to work on Horsfield's request, relative to other demands on city officials' time." *Id.* at 462–63.

As the defendants correctly note, *Horsfield* involved a probing inquiry into the city's allocations of resources. And the defendants believe that—at least as to the Governor—our constitution prohibits judicial examinations of that sort. So defendants contend that *Horsfield* precludes timeliness claims against the Governor.

We disagree. First, we note that although the *Horsfield* court *applied* a substantial compliance standard, we did not *adopt* that standard or anything similar. Nor have we since. Nor has the district court determined whether that kind of analysis could apply in this case. At this stage, then, it is premature for us to address the issue in much depth.[4]

Even if we assume, though, that a *Horsfield*-style substantial compliance model could apply here, we do not believe that it would require dismissal of the timeliness claims against the Governor. As explained, the *plaintiffs'* case under section 22.10(2) should turn on objective *public* facts, namely, did the defendants' response amount to a refusal? Nothing about *Horsfield* suggests

---

[4]In the interest of abundant clarity, nothing in this opinion should be read as an endorsement or rejection of *Horsfield*'s substantial compliance standard or anything similar. Again, we leave that issue for the district court in the first instance.

otherwise. Indeed, *Horsfield* makes it clear that its substantial compliance inquiry was *not* part of the *plaintiff*'s case. Thus, *Horsfield* provides no basis for a *plaintiff* to contend that *its* burden of proof requires a *Horsfield*-style inquiry—either in discovery or at trial—into a defendant's internal decision-making.

Rather, *Horsfield*'s substantial compliance inquiry concerned the *defendant*'s "burden of going forward to demonstrate compliance with the Act." *Horsfield*, 834 N.W.2d at 463. From a functional perspective, then, the *Horsfield* substantial compliance theory is not unlike an affirmative defense. A defendant may assert it or not. It's the defendant's choice. And that strategic choice will help shape the issues in the case, the evidence needed, and the discovery permitted.

We do not suggest, though, that assertion of a "substantial compliance" theory would automatically open every door. Even if the defendants choose to assert a theory of this kind, there may still be issues to decide about *how far* the inquiry can proceed in light of the Governor's assertions of executive sovereignty, executive privilege, or other protections. Fortunately, our district court judges are experienced in addressing issues like this. Privilege issues are a routine part of discovery, motion practice, and trials. In all of those settings, our judges fairly resolve claims of privilege and prevent unwarranted intrusions. We trust that they will do so if such issues arise in this case or others like it.

Again, though, questions of this kind are for the district court in the first instance. Looking strictly at the record before us now, we see no reason why the plaintiffs cannot advance timeliness claims without inquiring into political

questions or invading executive privilege. At this stage, then, we do not believe that the Governor's constitutional concerns require dismissal of the plaintiffs' claims.

### III. Conclusion.

We affirm the district court's denial of the defendants' motion to dismiss. We remand for further proceedings consistent with this opinion.

**AFFIRMED AS MODIFIED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Mansfield, J., who takes no part.